IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RANDY ATES, § | | |
|     Petitioner, § | | |
| § | | |
| V. § | A-13-CA-446-SS | |
| § | | |
| WILLIAM STEPHENS, Director, § | | |
| Texas Dept. of § | | |
| Criminal Justice-Correctional § | | |
| Institutions Division, § | | |
|     Respondent. § | | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE SAM SPARKS
          UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. §636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates, as amended, effective December 1, 2002.

Before the Court are Petitioner's Application for Habeas Corpus Relief under 28 U.S.C. § 2254 (Document 1); Respondent's Answer (Document 7); and Petitioner's reply thereto (Document 9).[1] Petitioner, proceeding pro se, has paid the applicable filing fee for his application. For the reasons set forth below, the undersigned finds that Petitioner's application for writ of habeas corpus should be denied.

---

[1] Attached to Petitioner's reply is a Motion for Relief from Judgment purportedly filed pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. The subject of the motion is a state court judgment. Rule 60(b) applies to federal court judgments, and the motion should therefore be denied.

## STATEMENT OF THE CASE

A.   **Petitioner's Criminal History**

According to Respondent, the Director has lawful and valid custody of Petitioner pursuant to judgments and sentences of the 427th Judicial District Court of Travis County, Texas, in cause number D-1-DC-06-302099. Petitioner was charged by indictment with three counts of the offense of aggravated sexual assault of a child (counts one, two, and three), three counts of indecency with a child by contact (counts four, five, and six), and four counts of indecency with a child by exposure (counts seven, eight, nine, and ten). On May 29, 2009, a jury found Petitioner guilty as charged of three counts of aggravated sexual assault of a child and one count of indecency with a child by contact. Thereafter, the trial court sentenced him to three terms of forty years' imprisonment and one term of twenty years' imprisonment, respectively, with all four sentences to run concurrently.

On February 4, 2011, the Third Court of Appeals of Texas affirmed Petitioner's convictions and denied his motion for rehearing.[2] Ates v. State, No. 03-09-00501-CR, 2011 WL 350476 (Tex. App.– Austin 2011, pet. ref'd). On September 14, 2011, the Texas Court of Criminal Appeals refused Petitioner's petition for discretionary review. Ates v. State, PDR No. 0318-11.

Petitioner also challenged his convictions in a state application for writ of habeas corpus. Ex parte Ates, Appl. No. 77,820-02. The Court of Criminal Appeals denied the application without written order on August 15, 2012. Id. at cover. Petitioner filed a subsequent state application, which the Court of Criminal Appeals dismissed as successive on April 17, 2013. Id, at -03.

---

[2]The Third Court of Appeals of Texas initially affirmed Petitioner's convictions on December 10, 2010. Ates v. State, No. 03-09-00501-CR, 2010 WL 5019043 (Tex. App.– Austin 2010). However, on February 4, 2011, the appellate court subsequently issued a new opinion, again affirming Petitioner's convictions, to be substituted in place of its prior opinion, and also denied his motion for rehearing.

B.   **Factual Background**

The factual background of this case is found in the Court of Appeals opinion and is repeated below.

> A.A., the alleged victim in this case, testified that Ates sexually assaulted her many times over a several-year period. The first assault, which the trial participants dubbed the "bathroom" incident, allegedly occurred when A.A. was approximately six years old. Ates was living in A.A.'s home at the time along with his girlfriend and the mother of his children, Debbie Duran (A.A.'s aunt). A.A. testified that one day while she and Ates were the only people at home, Ates came into the bathroom as A.A. was finishing using it. Ates allegedly told A.A. to sit back down on the toilet. He then allegedly took off her pants, took off his own pants, and proceeded to rub his penis on her vagina until he ejaculated. Afterwards he allegedly told A.A. to take a bath or shower. FN1
>
>> FN1. At trial, A.A. could not remember whether Ates told her to take a bath or a shower. Ates later argued to the jury that this fact showed A.A.'s story was inconsistent.
>
> A second group of incidents, which the trial participants dubbed the "master bedroom" incidents, occurred when A.A. was approximately eight years old. A.A. was still living with Ates, Duran, and their children at the time, but in a different house from the one in which the bathroom incident allegedly occurred. A.A. testified that on occasions when Ates was the only adult at home with the children, he would frequently assign them "chores." A.A.'s "chore" was always to "clean" Ates's bedroom. While the other children did chores elsewhere in the house, Ates would allegedly carry A.A., kicking and screaming, to his bedroom, where he would lay her on the bed and undress her. He would then allegedly either perform oral sex on her or remove his own clothes, lay on top of her, and rub his penis on her vagina until he ejaculated. A.A. testified that such incidents occurred more than fifteen times. On one occasion, A.A. tried to resist by picking up a bedside phone and hitting Ates in the head with it. A.A. testified that Ates "punished" her by flipping her over and penetrating her anus with his penis.FN2
>
>> FN2. Ates's indictment and the jury charge both contained two sexual-assault counts arising from bedroom incidents: one based on oral sex and one based on anal penetration.
>
> The third incident, which the trial participants dubbed the "van" incident, also occurred when A.A. was approximately eight years old. A.A. testified that Ates occasionally drove her and the other children to a neighborhood swimming pool.

3

Ates would let the other children exit his van to play in the pool but would make A.A. stay in the van with him. A.A. testified that Ates would remove her clothes, remove his own clothes, lie on top of her, and rub his penis on her vagina until he ejaculated. She also testified that Ates would occasionally "barely" penetrate her vagina with his penis. On the occasion that was dubbed the "van" incident in the trial court, A.A. recalled that Ates used a strawberry-scented lubricant.

A.A. did not report Ates's abuse until she was approximately fifteen years old. Between the ages of 10 and 15, A.A. did not live with Ates; rather, she lived with her mother and her mother's boyfriend. Her mother's boyfriend sexually assaulted A.A. during that time, eventually resulting in her becoming pregnant. In the course of explaining the pregnancy to her family and boyfriend, A.A. revealed that she had been abused by Ates.

A.A.'s family reported her abuse to the police, who began investigating. Detective Jissett Gaslin interviewed A.A. and then interviewed Ates. Eventually Detective Gaslin obtained a warrant for Ates's arrest. A grand jury indicted Ates for three counts of aggravated sexual assault of a child, three counts of indecency with a child by contact, and four counts of indecency with a child by exposure. Ates pleaded not guilty and went to trial.

At trial, A.A. testified to the abuse she suffered at Ates's hands. Ates's son, Xavier, also testified. Xavier had lived with Ates and A.A. during the period when Ates was allegedly abusing A.A. Xavier testified that once, at age two, he witnessed Ates touching A.A. while both were naked.FN3 The incident allegedly occurred in Ates's bedroom. Xavier testified that during the incident a pornographic videotape was playing on a television in the room.

> FN3. The State did not ultimately elect to use this incident as a basis for seeking a conviction.

Xavier's sister, Sabrina, who also lived with Ates and A.A. during the period when Ates was allegedly abusing A.A., testified that she once heard A.A. scream "help" and "stop it" while A.A. was alone in a room with Ates. Sabrina testified that at the time she thought A.A. was screaming because she was being spanked.

Xavier and Sabrina's mother, Debbie Duran, testified that on one occasion when she was living with Ates, she entered a bedroom and saw Ates leaning over a bed in which A.A. was lying under the covers. Ates had his hand under the covers, and Duran testified that it "d[idn't] look right." Duran asked Ates what was going on, and he said that he was trying to recover a "sippy cup" that A.A. was hiding under the covers. Duran was suspicious and asked A.A. if Ates was telling the truth. A.A.

4

initially replied that he was, though she testified that she eventually told Duran he was not. Duran, however, did not testify that A.A. eventually said Ates was lying.

Sally Martinez–Cortez was Ates's girlfriend at the time Ates was arrested. She testified that after the police interviewed Ates, he came to her house and "gutted" her dishwasher so that he could hide in it if the police came to arrest him.

Police officer David Nordstrom testified that when he went with a group of officers to arrest Ates at the house where Ates was staying, Ates climbed out the back window and attempted to flee.

At the jury-charge conference, the parties discussed the State's need to elect a single instance of abuse as the basis for each count in the charge. The court denoted the instances the State elected by inserting "bathroom," "master bedroom," and "van" in parentheses under each of the counts in the charge. Ates objected to this method of denoting the State's elections, arguing that the "bathroom" and "master bedroom" counts should specify the addresses of the houses in which they occurred FN4 and the "van" count should specify that it occurred "in a parking lot at a public swimming pool." The court overruled this objection.

> FN4. Recall that Ates and A.A. lived together in two different houses.

The jury charge ultimately contained seven counts. On the basis of the bathroom incident, the charge contained one count of aggravated sexual assault, one count of indecency with a child by contact, and one count of indecency with a child by exposure. On the basis of the master bedroom incidents, the charge contained one count of aggravated sexual assault involving oral sex, one count of aggravated sexual assault involving anal penetration, and one count of indecency with a child by contact. Finally, on the basis of the van incident, the charge contained one count of indecency with a child by contact. The charge instructed the jury that if it found Ates guilty on the assault counts arising from the bathroom and bedroom incidents, it should not go on to consider the indecency counts arising from those incidents.

The jury found Ates guilty on all three bathroom- and bedroom-related assault counts. Accordingly, it did not reach the bathroom- and bedroom-related indecency counts. The jury also found Ates guilty on the van-related indecency count. Ates elected for the court to assess punishment. The court imposed a forty-year sentence for each of the assault counts and a twenty-year sentence for the indecency count.

Ates v. State, No. 03-09-00501-CR, 2011 WL 350476 at, *1-3 (Tex. App.– Austin 2011, pet. ref'd).

C.  **Petitioner's Grounds for Relief**

Petitioner raises the following grounds for relief:

1. The State's indictment was untimely; therefore, the resulting judgments are void;

2. The trial court erred in denying his request for an election;

3. The trial court erred in allowing an erroneous jury charge;

4. He was denied his constitutional protection against double jeopardy; and

5. The trial court's judgments are void because they violate the Double Jeopardy Clause.

D.  **Exhaustion of State Court Remedies**

Respondent does not contest that Petitioner has exhausted his state court remedies regarding the claims brought in this application with the exception of his claim that the indictment was untimely. Respondent argues the claim challenging the indictment is procedurally defaulted.

## DISCUSSION AND ANALYSIS

A.  **The Antiterrorism and Effective Death Penalty Act of 1996**

The Supreme Court has summarized the basic principles that have grown out of the Court's many cases interpreting the 1996 Antiterrorism and Effective Death Penalty Act. See <u>Harrington v. Richter</u>, – U.S. –, 131 S. Ct. 770, 783-85 (2011). The Court noted that the starting point for any federal court in reviewing a state conviction is 28 U.S.C. § 2254, which states in part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>   (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Court noted that "[b]y its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington, 131 S. Ct. at 784.

One of the issues Harrington resolved was "whether § 2254(d) applies when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." Id. Following all of the Courts of Appeals' decisions on this question, Harrington concluded that the deference due a state court decision under § 2554(d) "does not require that there be an opinion from the state court explaining the state court's reasoning." Id. (citations omitted). The Court noted that it had previously concluded that "a state court need not cite nor even be aware of our cases under § 2254(d)." Id. (citing Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam)). When there is no explanation with a state court decision, the habeas petitioner's burden is to show there was "no reasonable basis for the state court to deny relief." Id. And even when a state court fails to state which of the elements in a multi-part claim it found insufficient, deference is still due to that decision, because "§ 2254(d) applies when a 'claim,' not a component of one, has been adjudicated." Id.

As Harrington noted, § 2254(d) permits the granting of federal habeas relief in only three circumstances: (1) when the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the Supreme Court; (2) when the earlier decision "involved an unreasonable application of" such law; or (3) when the decision "was based on an unreasonable determination of the facts" in light of the record before the state court. Id. at 785 (citing 28 U.S.C.

7

§ 2254(d); Williams v. Taylor, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523 (2000)). The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." Dowthitt v. Johnson, 230 F.3d 733, 740 (5th Cir. 2000) (quotation and citation omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.

Id. at 740-41 (quotation and citation omitted). Under the "unreasonable application" clause of § 2254(d)(1), a federal court may grant the writ "if the state court identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 741 (quotation and citation omitted). The provisions of § 2254(d)(2), which allow the granting of federal habeas relief when the state court made an "unreasonable determination of the facts," are limited by the terms of the next section of the statute, § 2254(e). That section states that a federal court must presume state court fact determinations to be correct, though a petitioner can rebut that presumption by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). But absent such a showing, the federal court must give deference to the state court's fact findings. Id.

**B.    Indictment Challenge**

In his first ground for relief, Petitioner contends the State's indictment was untimely. He concludes the trial court's judgments are void. Respondent contends Petitioner's claim is procedurally barred. He explains Petitioner raised this claim in a subsequent state application for habeas corpus relief which was dismissed as successive.

8

A federal habeas corpus action provides an important, but limited, examination of state criminal judgments. Because "state courts are the principal forum for asserting constitutional challenges to state convictions," concerns for comity, federalism, and finality define the contours of federal habeas review. Richter, 562 U.S. at ——, 131 S. Ct. at 787; see also Calderon v. Thompson, 523 U.S. 538, 555–56 (1998). Accordingly, procedural doctrines may limit what issues a federal habeas court may examine.

The AEDPA requires exhaustion of federal claims in the highest state court before federal habeas relief becomes available. See 28 U.S.C. § 2254(b)(1). Even when a prisoner exhausts state remedies, how he has exhausted them determines the course of federal review. Federal practice limits review to those claims that are presented in compliance with state procedural law. See Dretke v. Haley, 541 U.S. 386, 392 (2004); Lambrix v. Singletary, 520 U.S. 518, 523 (1997); Coleman v. Thompson, 501 U.S. 722, 729 (1991). The procedural-default doctrine, which functions as "[a] corollary to the habeas statute's exhaustion requirement," Haley, 541 U.S. at 392–93, forecloses federal habeas review on claims that "a state court declined to hear because the prisoner failed to abide by a state procedural rule." Martinez v. Ryan, —— U.S. ——, 132 S. Ct. 1309, 1316 (2012); see also Lambrix, 520 U.S. at 523; Coleman, 501 U.S. at 729.

Petitioner raised his challenge to the timeliness of the indictment for the first time in his successive state habeas application. The Court of Criminal Appeals dismissed the successive application under its abuse-of-the-writ doctrine, codified in article 11.07, section 4 of the Texas Code of Criminal Procedure. The Fifth Circuit has generally held that this doctrine is an adequate and independent state procedural ground to bar federal review and has been strictly and regularly applied since 1994. Fearance v. Scott, 56 F.3d 633, 642 (5th Cir. 1995). However, a petitioner can still

obtain federal habeas review on a claim dismissed by the state court on the grounds of procedural default if he can show cause and actual prejudice for his procedural default or that a failure to address the merits of the federal claim would result in a miscarriage of justice. Moore v. Roberts, 83 F.3d 699, 702 (5th Cir. 1996), citing Coleman, 501 U.S. at 750, cert. denied, 519 U.S. 1093 (1997). In this case, Petitioner has failed to show cause and actual prejudice for his procedural default and has made no showing that a failure to address the merits of the federal claim would result in a miscarriage of justice. Therefore, Petitioner is barred from raising his challenge to the timeliness of the indictment.

Alternatively, Petitioner's claim has no merit. The Texas Court of Criminal Appeals has held that "a statute extending a period of limitation applies to all offenses not barred at the time of the passage of the act, so that a prosecution may be commenced at any time within the newly established period, although the old period has expired." Archer v. State, 577 S.W.2d 244, 244 (Tex . Crim. App. 1979). In the instant case, the date of the offense was on or about January 1, 1996. At that time, the applicable limitations period was ten years. In 1997, before the limitations period expired, the legislature added Section 12.01(5), establishing the limitations period for sexual assault of a child and aggravated sexual assault of a child as ten years from the eighteenth birthday of the victim of the offense. See Act of May 24, 1997, 75th Leg., R.S., ch. 740, §§ 1, 4, 1997 Tex. Gen. Laws 2403 (current version at TEX. CODE CRIM. PROC. art 12.01(1)(B)). Petitioner's indictment was handed down on October 23, 2006, and at the time of trial the victim was 19. Therefore, the statute of limitations as extended had not run, because the State had until the victim's twenty-eighth birthday to bring its case against Petitioner.

C.     **Election Claim**

In his second and third grounds for relief Petitioner argues the trial court erred in allowing the State to proceed on seven separate and distinct offenses by submitting those offenses to the jury "on the same, single verdict form, which did not inform the jury on the constitutional necessity of unanimously finding one specific incident proven beyond a reasonable doubt in order to reach a conviction," thereby violating the provision of the "Texas Constitution requiring a unanimous verdict in felony criminal cases" and state rules of criminal procedure requiring "a separate jury form with a correct unanimity instruction" for each count, if a single indictment might result in multiple convictions.  Further, Petitioner argues "this violation of the unanimity requirement constitutes the violation of [his] fundamental right to due process of law" under the United States Constitution.

Insofar as petitioner complains the Texas appellate courts erroneously applied state-law principles in rejecting his claims, his arguments do not furnish a basis for federal habeas relief. Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also presented. See Estelle v. McGuire, 502 U.S. 62, 67–68, (1991) (holding complaints regarding the admission of evidence under California law did not present grounds for federal habeas relief absent a showing that admission of the evidence in question violated due process); Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (recognizing federal habeas relief will not issue for errors of state law); Pulley v. Harris, 465 U.S. 37, 41 (1984) (holding a federal court may not issue the writ on the basis of a perceived error of state law).  In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. Estelle v. McGuire, 502 U.S. at 67–68; Lewis v. Jeffers, 497 U.S. at 780; Pulley v. Harris, 465 U.S. at 41.  When a federal district court reviews a state prisoner's habeas

petition pursuant to 28 U.S.C. § 2254 it must decide whether the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States."

Petitioner's allegations that the trial court erred in ruling on his election request and his objection to the resulting jury charge have already been considered and rejected on both direct appeal and state habeas review. On appeal the state court overruled Petitioner's point of error and explained as follows:

> Ates argues that the jury charge did not properly specify the alleged incidents of abuse on which the State elected to seek conviction. At the jury-charge conference, the parties discussed the State's need to elect a specific instance of abuse as the basis for each count in the charge. The court ultimately denoted the instances the State elected by inserting "bathroom," "master bedroom," or "van" in parentheses under each count in the jury charge. Ates objected to this method of denoting the State's elections, arguing that the "bathroom" and "master bedroom" counts should specify the addresses of the houses in which they occurred and the "van" count should specify that it occurred "in a parking lot at a public swimming pool." The court overruled this objection. Ates argues that doing so was error because the lack of geographical specificity meant the jury might not limit its deliberation on each count to a specific incident. See Phillips v. State, 193 S.W.3d 904, 910 (Tex. Crim. App. 2006) (one purpose of election is to ensure jurors unanimously agree one specific incident occurred constituting charged offense).
>
> We disagree. The jury charge clearly listed a specific location ("bedroom," "master bedroom," or "van") in bold font under each count in the jury charge. These locations were not vague, confusing, or otherwise unspecific. We presume that the jury heeded them and limited its deliberations accordingly. See Resendiz v. State, 112 S.W.3d 541, 546 (Tex. Crim. App. 2003) (appellate courts presume jury follows instructions).
>
> Ates also argues that the jury charge should not have simply listed a location under each count, but rather should have included a location as an element of each charged offense. He complains that the failure to include a location as an element of each offense led to the possibility of a non-unanimous verdict. FN7 He argues, in other words, that location needed to be included as an element of each offense to insure jury unanimity. Location is not, however, a material element of the offenses at issue. See TEX. PENAL CODE §§ 21.11, 22.021(a)(1)(B). Ates does not argue that the jury charge left out any material elements of the charged offenses; rather, he argues that

the jury charge should have included <u>additional</u> elements in the form of locations and addresses.

> FN7. We note that because Ates first urged his election request at the jury-charge stage, there was no issue concerning whether the method of election gave him sufficient notice. <u>See</u> <u>Phillips v. State</u>, 193 S.W.3d 904, 910 (Tex. Crim. App. 2006) (one purpose of election is to "give the defendant notice of the particular offense the State intends to rely upon for prosecution and afford the defendant an opportunity to defend"). That is to say, Ates's election request came too late to serve the purpose of ensuring that he had notice. <u>See id.</u> at 912 (to preserve right to notice, defendant must make election request at close of State's case-in-chief). Thus, jury unanimity is the only election-related concern we address.

"Unanimity" simply means that "each and every juror agrees that the defendant committed the same, single, specific criminal act ." <u>Ngo v. State</u>, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005). The trial court chose to address Ates's unanimity concern by indicating the State's election through a header under each count in the charge. An "election" generally requires " <u>some action</u> that excludes or limits the jury's consideration of an offense," such as a limiting instruction. <u>Ex parte Goodbread</u>, 967 S.W.2d 859, 861 n .2 (Tex. Crim. App. 1998) (emphasis added). The court's chosen method of indicating the State's election, along with an instruction that the jury had to reach a unanimous verdict to find Ates guilty on any individual count, served to ensure that the jurors agreed on a single specific act upon which they returned a verdict. We overrule Ates's second issue.

<u>Ates v. State</u>, No. 03-09-00501-CR, 2011 WL 350476 at, *5 (Tex. App.– Austin 2011, pet. ref'd).

As explained by Respondent, the state court conclusively determined that Petitioner's instant allegations fail to even demonstrate any error under Texas law, much less prove that any alleged error so infected Petitioner's trial that his convictions violate federal due process. Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. Accordingly, Petitioner's claim does not warrant federal habeas relief.

**D.     Double Jeopardy**

In his fourth and fifth grounds for relief, Petitioner argues the judgments of conviction and sentences in the instant case violate his constitutional protection against double jeopardy and are void. According to Petitioner, his sentences constitute multiple punishments for the same offense because he was separately convicted of "four counts of sexual abuse offenses occurring in the same, alleged criminal episode."

For purposes of federal habeas litigation, the double jeopardy bar protects against a second prosecution after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense. Ohio v. Johnson, 467 U.S. 493, 498 (1984). The test to be applied to determine whether there are multiple offenses or only one is whether each provision requires proof of an additional fact which the other does not. Blockburger v. United States, 284 U.S. 299, 304 (1932). With regards to aggravated sexual assault, Texas courts have held each different act described in the sexual assault statute constitutes a separate offense, even if the acts proscribed are committed in the same criminal occurrence, and may thus be punished separately without violating the Double Jeopardy Clause. Gonzales v. State, 304 S.W.3d 838, 847–49 (Tex. Crim. App. 2010); see Vick v. State, 991 S.W.2d 830, 833 (Tex. Crim. App.1999) (explaining one transaction of aggravated sexual assault can result in the commission of separate statutory offenses).

In Petitioner's case, he was convicted of three separate aggravated sexual assaults and indecency with a child by contact. The first aggravated sexual assault was dubbed the "bathroom" incident and occurred when the victim was six. In this incident Petitioner rubbed his penis on the victim's vagina until he ejaculated. The second and third aggravated sexual assaults were dubbed the "master bedroom" incidents and occurred when the victim was eight. The master bedroom

14

incidents involved Petitioner performing oral sex on the victim and penetrating her anus with his penis. The final offense for which Petitioner was convicted was dubbed the "van" incident and also occurred when the victim was approximately eight. This offense involved Petitioner removing the victim's clothes and his clothes, lying on top of the victim, and rubbing his penis on her vagina until he ejaculated. These convictions involved four separate offenses, each with distinct elements the State had to and did prove. Consequently, the Blockburger test is satisfied, and Petitioner was not subjected to double jeopardy.

Moreover, Petitioner raised this claim in his state application for habeas corpus relief. The Texas Court of Criminal Appeals rejected the claim and denied the application without written order. Ex parte Ates, Appl. No. 77,820-02. Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. Accordingly, Petitioner's claim does not warrant federal habeas relief.

## RECOMMENDATION

It is recommended that Petitioner's application for writ of habeas corpus be denied and his Motion for Relief from Judgment (attached to his reply) should be dismissed.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in Slack v. McDaniel, 529 U.S. 473, 484 (2000).  In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Id.  "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Id.

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed.  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack, 529 U.S. at 484).  Accordingly, it is respectfully recommended that the Court shall not issue a certificate of appealability.

## OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See 28 U.S.C. § 636(b)(1)(C);  Thomas v. Arn, 474 U.S. 140, 150-153 (1985); Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 21st day of April, 2014.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE