**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

FILED

2014 JUN 13 PM 4: 51

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
DEPUTY

RANDY ATES,

                    **Petitioner,**

-vs-                                          **Case No. A-13-CA-446-SS**

WILLIAM STEPHENS,

                    **Respondent.**

# O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Petitioner Randy Ates's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 [#1], the Report and Recommendation of the United States Magistrate Judge [#11] (R&R), Ates's Motion for Extension of Time to File Objections [#14], and Ates's Objections [#15]. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders OVERRULING Ates's Objections, ACCEPTING the R&R, and DENYING Ates's Petition.

All matters in this case were referred to United States Magistrate Judge Andrew W. Austin for report and recommendation pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. Ates is entitled to de novo review of the portions of the Magistrate Judge's report to which he filed specific objections. 28 U.S.C. § 636(b)(1). All other review is for plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc). Nevertheless, this Court has reviewed the entire file de novo, and

agrees with the Magistrate Judge's recommendation.

## Background

### I.    Procedural History

Ates is currently in custody of the Texas Department of Criminal Justice pursuant to judgments and sentences entered by the 427th District Court of Travis County, Texas, in cause number D-1-DC-06-302099. Ates was charged by indictment with three counts of aggravated sexual assault of a child, three counts of indecency with a child by contact, and four counts of indecency with a child by exposure. Ates pleaded not guilty and proceeded to trial. On May 29, 2009, a jury found Ates guilty on three counts of aggravated sexual assault of a child and one count of indecency with a child by contact. Ates was sentenced by the court to three terms of forty years' imprisonment on the assault charges and one term of twenty years' imprisonment on the indecency charge, all to run concurrently.

The Third Court of Appeals of Texas affirmed Ates's convictions and denied his motion for rehearing on February 4, 2011. *Ates v. State*, No. 03-09-00501-CR, 2011 WL 350476 (Tex. App.—Austin Feb. 4, 2011, pet. ref'd). The Texas Court of Criminal Appeals refused Ates's petition for discretionary review on September 14, 2011. Ates then challenged his convictions in a state application for writ of habeas corpus, which the Texas Court of Criminal Appeals denied without written order on August 15, 2012. *Ex parte Ates*, Appl. No. 77,820-02. Ates filed a subsequent state application and the Texas Court of Criminal Appeals dismissed it as successive on April 17, 2013.

### II.   Factual Background

The horrific facts of this case were succinctly described by the Third Court of Appeals as follows:

A.A., the alleged victim in this case, testified that Ates sexually assaulted her many times over a several-year period. The first assault, which the trial participants dubbed the "bathroom" incident, allegedly occurred when A.A. was approximately six years old. Ates was living in A.A.'s home at the time along with his girlfriend and the mother of his children, Debbie Duran (A.A.'s aunt). A.A. testified that one day while she and Ates were the only people at home, Ates came into the bathroom as A.A. was finishing using it. Ates allegedly told A.A. to sit back down on the toilet. He then allegedly took off her pants, took off his own pants, and proceeded to rub his penis on her vagina until he ejaculated. Afterwards he allegedly told A.A. to take a bath or shower.[1]

> FN1: At trial, A.A. could not remember whether Ates told her to take a bath or a shower. Ates later argued to the jury that this fact showed A.A.'s story was inconsistent.

A second group of incidents, which the trial participants dubbed the "master bedroom" incidents, occurred when A.A. was approximately eight years old. A.A. was still living with Ates, Duran, and their children at the time, but in a different house from the one in which the bathroom incident allegedly occurred. A.A. testified that on occasions when Ates was the only adult at home with the children, he would frequently assign them "chores." A.A.'s "chore" was always to "clean" Ates's bedroom. While the other children did chores elsewhere in the house, Ates would allegedly carry A.A., kicking and screaming, to his bedroom, where he would lay her on the bed and undress her. He would then allegedly either perform oral sex on her or remove his own clothes, lay on top of her, and rub his penis on her vagina until he ejaculated. A.A. testified that such incidents occurred more than fifteen times. On one occasion, A.A. tried to resist by picking up a bedside phone and hitting Ates in the head with it. A.A. testified that Ates "punished" her by flipping her over and penetrating her anus with his penis.[2]

> FN2: Ates's indictment and the jury charge both contained two sexual-assault counts arising from bedroom incidents: one based on oral sex and one based on anal penetration.

The third incident, which the trial participants dubbed the "van" incident, also occurred when A.A. was approximately eight years old. A.A. testified that Ates occasionally drove her and the other children to a neighborhood swimming pool. Ates would let the other children exit his van to play in the pool but would make A.A. stay in the van with him. A.A. testified that Ates would remove her clothes, remove his own clothes, lie on top of her, and rub his penis on her vagina until he ejaculated. She also testified that Ates would occasionally "barely" penetrate her vagina with his penis. On the occasion that was dubbed the "van" incident in the trial court, A.A. recalled that Ates used a strawberry-scented lubricant.

-3-

A.A. did not report Ates's abuse until she was approximately fifteen years old. Between the ages of 10 and 15, A.A. did not live with Ates; rather, she lived with her mother and her mother's boyfriend. Her mother's boyfriend sexually assaulted A.A. during that time, eventually resulting in her becoming pregnant. In the course of explaining the pregnancy to her family and boyfriend, A.A. revealed that she had been abused by Ates.

A.A.'s family reported her abuse to the police, who began investigating. Detective Jissett Gaslin interviewed A.A. and then interviewed Ates. Eventually Detective Gaslin obtained a warrant for Ates's arrest. A grand jury indicted Ates for three counts of aggravated sexual assault of a child, three counts of indecency with a child by contact, and four counts of indecency with a child by exposure. Ates pleaded not guilty and went to trial.

At trial, A.A. testified to the abuse she suffered at Ates's hands. Ates's son, Xavier, also testified. Xavier had lived with Ates and A.A. during the period when Ates was allegedly abusing A.A. Xavier testified that once, at age two, he witnessed Ates touching A.A. while both were naked.[3] The incident allegedly occurred in Ates's bedroom. Xavier testified that during the incident a pornographic videotape was playing on a television in the room.

> FN3: The State did not ultimately elect to use this incident as a basis for seeking a conviction.

Xavier's sister, Sabrina, who also lived with Ates and A.A. during the period when Ates was allegedly abusing A.A., testified that she once heard A.A. scream "help" and "stop it" while A.A. was alone in a room with Ates. Sabrina testified that at the time she thought A.A. was screaming because she was being spanked.

Xavier and Sabrina's mother, Debbie Duran, testified that on one occasion when she was living with Ates, she entered a bedroom and saw Ates leaning over a bed in which A.A. was lying under the covers. Ates had his hand under the covers, and Duran testified that it "d[idn't] look right." Duran asked Ates what was going on, and he said that he was trying to recover a "sippy cup" that A.A. was hiding under the covers. Duran was suspicious and asked A.A. if Ates was telling the truth. A.A. initially replied that he was, though she testified that she eventually told Duran he was not. Duran, however, did not testify that A.A. eventually said Ates was lying.

Sally Martinez-Cortez was Ates's girlfriend at the time Ates was arrested. She testified that after the police interviewed Ates, he came to her house and "gutted" her dishwasher so that he could hide in it if the police came to arrest him.

Police officer David Nordstrom testified that when he went with a group of officers to arrest Ates at the house where Ates was staying, Ates climbed out the back window and attempted to flee.

At the jury-charge conference, the parties discussed the State's need to elect a single instance of abuse as the basis for each count in the charge. The court denoted the instances the State elected by inserting "bathroom," "master bedroom," and "van" in parentheses under each of the counts in the charge. Ates objected to this method of denoting the State's elections, arguing that the "bathroom" and "master bedroom" counts should specify the addresses of the houses in which they occurred[4] and the "van" count should specify that it occurred "in a parking lot at a public swimming pool." The court overruled this objection.

FN4: Recall that Ates and A.A. lived together in two different houses.

The jury charge ultimately contained seven counts. On the basis of the bathroom incident, the charge contained one count of aggravated sexual assault, one count of indecency with a child by contact, and one count of indecency with a child by exposure. On the basis of the master bedroom incidents, the charge contained one count of aggravated sexual assault involving oral sex, one count of aggravated sexual assault involving anal penetration, and one count of indecency with a child by contact. Finally, on the basis of the van incident, the charge contained one count of indecency with a child by contact. The charge instructed the jury that if it found Ates guilty on the assault counts arising from the bathroom and bedroom incidents, it should not go on to consider the indecency counts arising from those incidents.

The jury found Ates guilty on all three bathroom- and bedroom-related assault counts. Accordingly, it did not reach the bathroom- and bedroom-related indecency counts. The jury also found Ates guilty on the van-related indecency count.

*Ates*, 2011 WL 350476, at *1–3.

## III.   Ates's Claims

Ates asserts the following grounds for relief: (1) the State's indictment was untimely, and therefore the judgments are void; (2) the trial court erred in denying Ates's request for an election; (3) the trial court erred in allowing an erroneous jury charge; (4) Ates's double jeopardy rights were violated; and (5) the trial court's judgments are void because they violate the Double Jeopardy Clause.

## Analysis

### I.      Legal Standard

Federal habeas corpus relief is governed primarily by the Antiterrorism and Effective Death Penalty Act of 1996, colloquially known as AEDPA. Section 2254 permits the granting of federal habeas relief in only three circumstances: (1) when the state court's decision "was contrary to" clearly established federal law as decided by the Supreme Court; (2) when the state court's decision "involved an unreasonable application of" such law; or (3) when the decision "was based on an unreasonable determination of the facts" in light of the record before the state court. *Harrington v. Richter*, 131 S. Ct. 770, 783–85 (2011) (citing 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). State court factual determinations are presumed to be correct unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### II.      Application

Ates's claims can be grouped into three categories. First, Ates challenges the timeliness of the indictment. Second, Ates challenges the State's election and, relatedly, the verdict form. Third, Ates raises his double jeopardy challenges. The Court addresses each in turn.

### A.      Timeliness of the Indictment

Ates argues the State's indictment was untimely because the statutes of limitations at the time Ates was alleged to have committed the offenses—on or about January 1, 1996—were ten years. *Ex parte Goodbread*, 967 S.W.2d 859, 865 (Tex. Crim. App. 1998) (en banc) (citing TEX. CODE CRIM. PROC. arts. 12.01(2)(D), 12.03(d) (1997)). Ates was indicted on October 23, 2006, more than ten years from the date the offenses were allegedly committed. In 1997, the Texas legislature amended the Texas Code of Criminal Procedure and established a new limitations period: ten years from the

eighteenth birthday of the victim. *See* Act of May 24, 1997, 75th Leg., R.S., ch. 740, §§ 1, 4, 1997 Tex. Gen. Laws 2403 (current version at TEX. CODE CRIM. PROC. art. 12.01(1)(B) (no limitation)). A.A. was nineteen years old at the time of Ates's trial.

    As an initial matter, Ates has procedurally defaulted on this claim, and this Court therefore lacks the power to review it. Ates presented his timeliness challenge for the first time in his second (and successive) state habeas application. The Texas Court of Criminal Appeals dismissed the successive application under its abuse-of-the-writ doctrine. *See* TEX. CODE CRIM. PROC. art. 11.07, § 4. The Fifth Circuit has held the abuse-of-the-writ doctrine constitutes an adequate and independent state ground barring review of a claim in a subsequent federal habeas proceeding. *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995) ("The adequate and independent state ground doctrine 'bar[s] federal habeas when a state court decline[s] to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." (quoting *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991))). To overcome the procedural bar, Ates "must establish 'cause' and 'prejudice' from [the] failure to consider his claim," or show the failure to consider the claim "'will result in a fundamental miscarriage of justice.'" *Id.* (quoting *Coleman*, 501 U.S. at 750–51); *Moore v. Roberts*, 83 F.3d 699, 702 (5th Cir. 1996) (quoting *Coleman*, 501 U.S. at 750). Ates has made no attempt to show cause, prejudice, or a fundamental miscarriage of justice; his timeliness claim was certainly available to him at the time he filed his direct appeal as well as his first state habeas application. Finally, Ates has not shown "there is an absence of available State corrective process," as he suggests in his Objections, such that his claim might fall within that exception to § 2254's exhaustion requirement. *See* 28 U.S.C. § 2254(b)(1)(B)(i). To the contrary, there was a state corrective process in place. Ates simply failed to present his claim in his first state

habeas application as required by Texas law. Ates's timeliness claim is therefore procedurally defaulted, and this Court need not consider it.

Alternatively, even if Ates's claim were not procedurally defaulted, it would still not entitle Ates to any relief. The Texas Court of Criminal Appeals has held "a statute extending a period of limitation applies to all offenses not barred at the time of the passage of the act, so that a prosecution may be commenced at any time within the newly established period, although the old period of limitations has then expired." *Archer v. State*, 577 S.W.2d 244, 244 (Tex. Crim. App. 1979). More recently, the court reaffirmed its holding in *Archer*, explaining "a statute of limitations may be extended by the legislature, but a prosecution within the new time period will be permitted only if the limitations period had not already run before the law was changed." *Phillips v. State*, 362 S.W.3d 606, 613 (Tex. Crim. App. 2011). In 1996, the relevant statutes of limitations were ten years. Those statutes were amended in 1997—long before the ten-year statutes had run—to extend the limitations periods to ten years from the victim's eighteenth birthday. A.A. was nineteen years old at the time of Ates's trial. Ates's indictment was therefore timely, and his claim has no merit. Additionally, his novel suggestion in his Objections[1] that the legislature's extension of the statutes of limitations violates the Ex Post Facto Clause is meritless. *See id.* at 613 & n.29 ("And Texas courts, like all federal circuits that have ruled on the issue, have upheld the constitutionality of extending an unexpired criminal statute of limitations.").

---

[1] Because Ates raised his Ex Post Facto Clause challenge for the first time in his Objections, he has also procedurally defaulted on that claim. *See Fearance*, 56 F.3d at 642.

**B.      Election Claims**

In his second and third claims, Ates contends the state trial court erred by not requiring the state to elect which specific acts it would pursue on each count charged in the indictment, and further erred by submitting a verdict form which allowed the jury to return a non-unanimous verdict on a single offense. Ates contends the state trial court violated Texas state law and ultimately deprived him of his federal due process rights to a unanimous verdict and proof beyond a reasonable doubt.

First, to the extent Ates complains the state trial court violated state law, his claim is not cognizable on federal habeas because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995). Second, Ates's contention regarding his right to a unanimous verdict affords him no relief. As the Fifth Circuit has explained, a federal habeas court cannot say "the state court violated any federal right to a unanimous verdict in state court, because the Supreme Court 'has not held that the Constitution imposes a jury unanimity requirement.'" *Hoover v. Johnson*, 193 F.3d 366, 369 (5th Cir. 1999) (quoting *Richardson v. United States*, 526 U.S. 813, 821 (1999)).

Third, to obtain relief on his contention the state trial court's jury instructions or verdict form were erroneous, Ates's burden is to show the alleged error "'so infected the entire trial that the resulting conviction violates due process.'" *Kinnamon v. Scott*, 33 F.3d 462, 465 (5th Cir. 1994) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)). To the extent Ates has stated any cognizable basis for federal habeas relief, the Third Court of Appeals considered and rejected Ates's arguments on direct appeal. Addressing these issues in the direct appeal, the court wrote:

-9-

Ates argues that the jury charge did not properly specify the alleged incidents of abuse on which the State elected to seek conviction. At the jury-charge conference, the parties discussed the State's need to elect a specific instance of abuse as the basis for each count in the charge. The court ultimately denoted the instances the State elected by inserting "bathroom," "master bedroom," or "van" in parentheses under each count in the jury charge. Ates objected to this method of denoting the State's elections, arguing that the "bathroom" and "master bedroom" counts should specify the addresses of the houses in which they occurred and the "van" count should specify that it occurred "in a parking lot at a public swimming pool." The court overruled this objection. Ates argues that doing so was error because the lack of geographical specificity meant the jury might not limit its deliberation on each count to a specific incident. *See Phillips v. State*, 193 S.W.3d 904, 910 (Tex. Crim. App. 2006) (one purpose of election is to ensure jurors unanimously agree one specific incident occurred constituting charged offense).

We disagree. The jury charge clearly listed a specific location ("[bathroom]," "master bedroom," or "van") in bold font under each count in the jury charge. These locations were not vague, confusing, or otherwise unspecific. We presume that the jury heeded them and limited its deliberations accordingly. *See Resendiz v. State*, 112 S.W.3d 541, 546 (Tex. Crim. App. 2003) (appellate courts presume jury follows instructions).

Ates also argues that the jury charge should not have simply listed a location under each count, but rather should have included a location as an element of each charged offense. He complains that the failure to include a location as an element of each offense led to the possibility of a non-unanimous verdict. He argues, in other words, that location needed to be included as an element of each offense to insure jury unanimity. Location is not, however, a material element of the offenses at issue. *See* TEX. PENAL CODE §§ 21.11, 22.021(a)(1)(B). Ates does not argue that the jury charge left out any material elements of the charged offenses; rather, he argues that the jury charge should have included additional elements in the form of locations and addresses.

"Unanimity" simply means that "each and every juror agrees that the defendant committed the same, single, specific criminal act." *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005). The trial court chose to address Ates's unanimity concern by indicating the State's election through a header under each count in the charge. An "election" generally requires "*some action* that excludes or limits the jury's consideration of an offense," such as a limiting instruction. *Ex parte Goodbread*, 967 S.W.2d 859, 861 n.2 (Tex. Crim. App. 1998) (emphasis added). The court's chosen method of indicating the State's election, along with an instruction that the jury had to reach a unanimous verdict to find Ates guilty on any individual

count, served to ensure that the jurors agreed on a single specific act upon which they
returned a verdict. We overrule Ates's second issue.

*Ates*, 2011 WL 350476, at *5 (footnote omitted).

The Third Court of Appeals thus determined Ates had failed to demonstrate error under
Texas state law, much less establish a violation of federal due process. The Court agrees with the
Magistrate Judge's statement there was "nothing unreasonable in the state habeas court's application
of clearly established federal law or in the state court's determination of facts in light of the
evidence." R&R, at 13. Although some objection made by Ates's counsel concerning the election
process may have been overruled, it appears the state trial court accurately required the State to tie
specific acts to each charge in the indictment and properly instructed the jury with respect to those
acts and charges. It appears Ates believes the state trial court was required to either submit seven
separate jury forms or instruct the jury it was only allowed to convict Ates of a single offense.
Neither argument has any merit, and Ates has failed to show any federal constitutional error
warranting federal habeas relief.[2]

## C.    Double Jeopardy Claims

In his fourth and fifth claims, Ates argues he was subjected to multiple punishments for the
same offense in violation of the Double Jeopardy Clause because his conduct amounts to a single
"criminal episode" under Texas law. The Double Jeopardy Clause protects against multiple

---

[2] Objecting to this portion of the R&R, Ates devotes a number of pages to a discussion of Texas Penal Code
section 3.03, concerning concurrent and consecutive sentences for offenses arising out of the same criminal episode.
Because Ates raises this argument for the first time (so far as the Court can tell) in his Objections, Ates has procedurally
defaulted on this claim and the Court need not consider it. However, Ates's argument appears to be primarily an
extension of his meritless double jeopardy arguments addressed below. Even assuming Ates is correct in his argument
that some older version of section 3.03 should have applied to his case, he has not demonstrated any error warranting
correction on federal habeas review. Section 3.03 only addresses when sentences may be run consecutively as opposed
to concurrently. All of Ates's sentences were order to run concurrently, and therefore any dispute over whether
consecutive sentences were allowable is irrelevant.

-11-

punishments for the same offense. *Ohio v. Johnson*, 467 U.S. 493, 498 (1984). In this case, the law in Texas is clear: "those who commit multiple discrete assaults against the same victim[] are liable for separate prosecution and punishment for every instance of such criminal conduct." *Vernon v. State*, 841 S.W.2d 407, 410 (Tex. Crim. App. 1992).[3] Ates's theory appears to be that he committed only a single offense across the years he abused A.A. This is not the law. The Texas Court of Criminal Appeals has repeatedly held the aggravated sexual assault of a child offense "is a conduct-oriented offense in which the legislature criminalized very specific conduct of several different types." *Vick v. State*, 991 S.W.2d 830, 832 (Tex. Crim. App. 1999); *see also Gonzales v. State*, 304 S.W.3d 838, 848–49 (Tex. Crim. App. 2010). As the court explained in *Vick*:

> The statute criminalizes many types of sexually assaultive conduct with a child. Yet, each section usually entails different and separate acts to commit the various, prohibited conduct. This specificity reflects the legislature's intent to separately and distinctly criminalize any act which constitutes the proscribed conduct. An offense is complete when a person commits any one of the proscribed acts. . . . These considerations lead us to conclude that the Legislature intended that each separately described conduct constitutes a separate statutory offense.

991 S.W.2d at 833.

Each of Ates's convictions and sentences is based on a separate and distinct act. When Ates assaulted A.A. in the bathroom, he committed the assault offense the jury found him guilty of with respect to that count. When Ates assaulted A.A. in the master bedroom, he committed two distinct offenses (one for oral contact, another for anal contact), and the jury found him guilty of both. Ates's conduct in the van was yet another distinct offense, and the jury found him guilty of indecency for that conduct. Ates was thus convicted of multiple offenses, and received one sentence for each

---

[3] In his Petition, Ates even acknowledges this fact with a citation to *Vernon*. Pet. [#1-6], Ex. 6 (Memo. in Support), at 25. Ates may be contending he must be tried in separate trials on separate indictments for each offense. That is not the law, and *Vernon* says no such thing.

offense, all of which were ordered to run concurrently. Ates is not entitled to federal habeas relief on his double jeopardy claims.

## Conclusion

The Court agrees with the Magistrate Judge. Ates has not shown the state habeas court's rejection of his claims was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). Accordingly, Ates's claims for federal habeas corpus relief are denied.

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2254 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Proceedings, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejects a movant's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a

constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal of Ates's § 2254 petition on substantive or procedural grounds, nor find the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484)). Thus, a certificate of appealability shall not issue.

Accordingly,

IT IS ORDERED that Petitioner Randy Ates's Motion for Extension of Time to File Objections [#14] is GRANTED;

IT IS FURTHER ORDERED that Petitioner Randy Ates's Objections [#15] are OVERRULED;

IT IS FURTHER ORDERED that the Report and Recommendation of the United States Magistrate Judge [#11] is ACCEPTED;

IT IS FURTHER ORDERED that Petitioner Randy Ates's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 [#1] is DENIED;

IT IS FINALLY ORDERED that a certificate of appealability is denied.

SIGNED this the _13th_ day of June 2014.

_Sam Sparks_

SAM SPARKS
UNITED STATES DISTRICT JUDGE

446 2254 ord kkt.frm                                    -14-